UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CHARLES E. HILL & ASSOCIATES, INC., § § | | |
| *Plaintiff,* § | | |
| § | | |
| vs. § | | CASE NO. 2:09-CV-313-JRG |
| § | | |
| ABT ELECTRONICS, INC. ET AL. § | | |
| *Defendants.* § | | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Compel (Dkt. No. 170), filed May 23, 2011, urging this Court to compel the production of draft license agreements and communications regarding license negotiations between Plaintiff Charles E. Hill & Associates, Inc. ("Hill") and any third party entered into to resolve past claims under the patents-in-suit.

I. BACKGROUND

Plaintiff Hill sued Defendants claiming patent infringement of the patents-in-suit. On November 19, 2010, this Court ordered Plaintiff to produce all final, executed licenses and settlement agreements existing between Hill and any third party related to the patents-in-suit ("licenses"). This Court ordered production of the existing licenses as a means to facilitate calculations of a reasonable royalty as a measure of damages. Such licenses have been produced or will be produced upon execution. Now, Defendants urge this Court to go behind the licenses themselves and compel Plaintiff to produce both unsigned drafts of the licensing agreements and other documents related to negotiations and communications between Hill and such third parties, entered into to resolve claims under the patents-in-suit. Principally, the Defendants argue that such production is permitted under the Federal Circuit's decision in *ResQNet*[1] and is necessary to

---

[1] *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F. 3d 860 (Fed. Cir. 2010).

develop a reasonable royalty calculation in this case. Plaintiff contends that such negotiations and settlement discussions are privileged, even under *ResQNet*, and further that they are suspect, at best, as a means to value the patents-in-suit.

## II. LEGAL STANDARD

The rules of discovery are accorded a broad and liberal treatment to affect their purpose of adequately informing litigants in civil trials. *Herbert v. Lando,* 441 U.S. 153, 176, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries," *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).

As the Fifth Circuit has repeatedly instructed, "'[a] district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse.'" *Beattie v. Madison County Sch. Dist.,* 254 F.3d 595, 606 (5th Cir. 2001) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.,* 213 F.3d 841, 855 (5th Cir. 2000)). *See also Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 220 (5th Cir. 2000). The party requesting discovery may move to compel the disclosure of any materials requested so long as such discovery is relevant and otherwise discoverable. *See* FED. R. CIV. P. 37; *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006) ("[Rule] 37(a)[(3)(B)(iii) and (iv)] empowers the court to compel the production of documents . . . upon motion by the party seeking discovery."). Non-privileged materials and information are discoverable if they are "relevant to any party's claim or defense" or if they "appear[] reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).

Before the Federal Circuit's *ResQNet* decision in 2010, courts within this District generally

applied the rule set forth in *Goodyear*,[2] providing that settlement negotiations are privileged while the resulting license agreement itself is discoverable. The *ResQNet* decision has caused some shift away from *Goodyear*'s bright-line rule and toward the discoverability of settlement negotiations. *See Tyco Healthcare Group LP v. E-Z-EM, Inc.,* 2:07-cv-262, (E.D. Tex. Mar. 2, 2010) (Ward, J.); *Datatreasury Corp. v. Wells Fargo & Co.*, 2:06-cv-72, 2010 WL 903259 (E.D. Tex. Mar. 4 2010) (Folsom, D.); *Clear with Computers LLC v. Bergdorf Goodman, Inc.*, 753 F. Supp. 2d 662 (E.D. Tex. 2010) (Davis, L.). This court now considers these decisions and seeks to clarify its approach to reconciling *ResQNet* with *Goodyear* in relation to the discovery of pre-execution license negotiations and settlement discussions.

### III. ANALYSIS

While some have opined that settlement negotiations relating to licenses are proper for production in all cases, citing *ResQNet* as an apparent replacement to *Goodyear*, this Court takes a case-by-case approach to the issue and holds that while *ResQNet* may create an exception to the *Goodyear* rule in certain circumstances, it has not wholly replaced *Goodyear*. Whether the license negotiations and settlement discussions are properly discoverable will likely depend on whether, within the context of each case, they are an accurate reflection of the patents' underlying value and whether their probative value exceeds their prejudicial effect.

The *Tyco* decision seems to view *ResQNet* as a complete substitute for *Goodyear*. *See Tyco,* 2010 WL 774878. While the *Datatreasury*[3] decision seems to accept *Tyco*'s blanket holding of discoverability, this Court does not reach that same conclusion. This Court finds itself much closer to the rationale developed in the *Clear with Computers*[4] decision. While signed licenses relating to the same patents-in-suit are accepted as a valuable source for

---

[2] *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F. 3d 976 (6th Cir. 2003).
[3] 2010 WL 903259.
[4] 753 F. Supp. 2d 662.

calculating a reasonable royalty, the negotiations behind those licenses must be viewed, as a general rule, as less probative and more prejudicial than the licenses themselves. The negotiation process is, by its nature, a place in which strategy predominates and often obscurity is generated at the cost of clarity. Parties are inclined to say or act in whatever way moves the process in their direction, regardless of the merit or truth of what is said or done at the negotiating table. Parties often employ an "end justifies the means" approach to negotiations. They do so for two primary reasons: (1) the end result, not the process of getting there, is the sole objective; and (2) the parties feel free to employ a wide variety of negotiating tactics because they consider that such negotiations are privileged and protected from future discovery. Citing its earlier decision in *Fromson v. Western Litho Plate & Supply Co.*, 853 F. 2d 1568, 1574 (Fed. Cir. 1988), the Federal Circuit said in *ResQNet* that "[d]etermining a fair and reasonably royalty is often … a difficult judicial chore, seeming to involve more the talents of conjurer than those of a judge." *ResQNet,* 594 F. 2d at 869. The blanket admissibility of all manner of negotiations permitting parties to go behind the executed licenses appears to this Court to primarily add heat and not light to an already difficult judicial chore. This being said, however, the Court finds itself supportive of the approach to this quandary laid out in *Clear with Computers*. 753 F. Supp. 2d 662.

In *Clear with Computers*, Defendants' filed a Motion to Compel, urging production of communications related to the negotiations of already-produced license agreements, where the licenses had been reached within the context of pending or threatened litigation. *Id.* at 663. The Court there adopted a case-by-case approach, and determined that "draft license agreements and settlement communications are likely to be key in determining whether the settlement agreements accurately reflect the inventions' value or were strongly influenced by a desire to

4

avoid or end full litigation." *Id.* at 664.  Further, the Court found that Defendants demonstrated that different companies settled for vastly different amounts as shown by the resulting licenses and that settlement communications would likely explain such inconsistencies.  *Id.*  Finally, the Court concluded that because the Plaintiff's business was to "litigate and license" patents and not to "compete with Defendants in the marketplace," their litigation-based licenses would likely be the only licenses of the patents-in-suit, making an accurate understanding of the negotiations behind them more important than otherwise.  *Id.*  The Court in *Clear with Computers* noted that the Plaintiff could not produce non-litigation licenses to alternatively establish the value of the license.  *Id.*

The Court finds the facts of this case analogous to those in *Clear with Computers*.  Here, as in *Clear with Computers*, Plaintiff's business is to litigate and license.  Hill does not openly compete with Defendants in the marketplace.  Accordingly, the settlement communications will be a valid consideration in determining whether the settlement agreements themselves accurately reflect the patents' value.  Here, Defendants indicate that payment amounts, provided for within the licenses produced, vary from as high as $3.5 million to as little as $100,000.  The draft versions of these license agreements as well as the underlying negotiations will help to clarify these discrepancies and, in truth, are probably the only source from which such clarity might come.  Accordingly, applying the case-by-case analysis adopted in *Clear with Computers*, this Court finds that here, the *Goodyear* rule must yield to the exception attributed to *ResQNet*.  The Court therefore will require production of the draft license agreements and underlying settlement negotiations in this case.  However, the Court cautions future litigants that such production will be viewed as the exception and not the rule.  Settlement negotiations are always suspect to some degree and are often littered with unreal assertions and unfounded expectations.  The Court is

aware that assertions made during settlement negotiations are generally made to "close the deal" and are not always grounded in facts or reason. Accordingly, while the Court allows discovery of the negotiations and settlement discussions at issue, the Court intends, as provided in *Datatreasury*, to thereafter direct its attention and scrutiny to the weight and degree that should properly be afforded to such negotiation materials.

## IV.   CONCLUSION

The Court hereby **GRANTS** the Motion to Compel and **ORDERS** Plaintiff to produce draft license agreements and communications, if any, between Hill and third parties relating to the negotiation of license agreements entered into to resolve past claims under the patents-in-suit within twenty-one (21) days of this Order. Pursuant to the existing Protective Order, such documents shall be designated "Outside Counsel Eyes Only Confidential Information."

**So ORDERED and SIGNED this 3rd day of April, 2012.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE